**Tomacena GUMPANBERGER, Respondent,**

v.

**Bill JAKOB, et al., Appellant.**

**No. ED 89519.**

Missouri Court of Appeals, Eastern District, Division One.

Dec. 26, 2007.

Jessica M. Mikale, Jason Cordes, Hillsboro, MO, for appellant.

Dwayne A. Johnson, St. Peters, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

This is a wrongful death case. Our inquiry concerns the verdict directing instruction. We find that the instruction tendered and given misled the jury in at least two material respects. Thus, we reverse and remand for a new trial.

### Factual and Procedural Background

Sadly the facts of this case—a child darting into the roadway—are neither unique nor uncommon. The accident occurred near St. Clair, Missouri on Missouri Highway 47. The speed limit on that particular stretch of Highway 47 is 55 miles per hour.

Bill Jakob was northbound on Highway 47 in his Ford F–150 truck, with his wife and child as passengers, traveling at approximately 50–55 miles per hour. Jakob's truck had just crested over a hill and was on a straightaway. Jakob was following a group of three cars that were all spaced about 2 1/2 to 3 car lengths apart. The distance between Jakob and the car in front of him was also approximately 2 1/2 to 3 car lengths. The cars in the group started slowing and swerving and Jakob likewise began slowing. Jakob testified that the first and second cars in the group of three he was following swerved before the third car. He testified that when the first car swerved, he began slowing down, and that he slowed down even more when the second car swerved. The final car swerved and slammed on its brakes, and at that point, Jakob saw a little boy approximately 6 to 8 feet in front of Jakob's truck. This was the first time Jakob saw the boy. Jakob braked and was able to stop or slow his vehicle in time to avoid hitting the car in front of him, but he was unable to avoid hitting the boy. The little boy was Daymeon Bradshaw, the six-year-old son of plaintiff Gumpanberger. Daymeon died approximately one hour after the accident from internal injuries.

Thomas Spurgeon, a witness who was traveling directly behind Jakob, saw the boy standing alone on the west side of Highway 47 just prior to the accident. Spurgeon saw the boy run into the highway, stating the boy "just took off." Spurgeon was the only witness who testified about seeing a boy on the side of the highway prior to the accident. However, Spurgeon's testimony was not specific as to where exactly the boy was when Spurgeon saw him and where the boy was in relation to Jakob's truck when Spurgeon saw the boy.

Gumpanberger sued Jakob for wrongful death, which proceeded to trial. Jakob made a motion for directed verdict at the close of Gumpanberger's evidence, and a motion for directed verdict at the close of all evidence, both of which the court overruled. During the jury instruction conference, Jakob's counsel objected to the verdict-director as not being in MAI format. The court overruled the objection. Jakob's counsel also asked for the submission of a comparative fault instruction for negligent supervision as to Gumpanberger. The court also denied that request.

The jury returned a verdict in favor of Gumpanberger, and Jakob moved for a judgment notwithstanding the verdict, or in the alternative, a new trial. The court held a hearing on the motions and denied both. Jakob appeals the case to this Court.

### Discussion

Jakob raises six points on appeal. Because we find Jakob's first point to be

dispositive, we address only that point. We disagree with Gumpanberger's argument that this point was not properly preserved for appeal.[1]

### Standard of Review

In his first point on appeal, Jakob argues that the trial court erred in submitting Jury Instruction No. 9 because it was not an authorized Missouri Approved Instruction. The issue of whether a jury instruction is proper is a matter of law subject to *de novo* review. *Boggs ex rel. Boggs v. Lay,* 164 S.W.3d 4, 20 (Mo. App. E.D.2005). The verdict director is the form by which the court instructs the jury on the substantive law. There is also a specific procedure by which instructions are given. Accordingly, a deviation from an approved MAI instruction is potentially a violation of both substantive and procedural due process. When reviewing claimed instructional error, the appellate court views the evidence most favorably to the instruction, disregards contrary evidence, and only reverses where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury. *Moore ex rel. Moore v. Bi–State Development Agency,* 87 S.W.3d 279, 293 (Mo.App. E.D.2002).

### Modifying the language

Jakob claims that the trial court erred in submitting an unauthorized instruction in that the instruction, as modified, failed to comply with MAI. Rule 70.02(b) of the Missouri Rules of Civil Procedure provides:

"Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject. Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts."

The following principles apply to appellate review in a case of instructional error resulting from a deviation from MAI format: (a) Where the dictates of MAI prescribe a particular form of instruction, the giving of an instruction contrary to that requirement constitutes error which is presumed to be prejudicial; (b) The burden is on the party who offered the erroneous instruction to demonstrate on appeal that the erroneous instruction created no substantial potential for a prejudicial effect; (c) It is the province of the

---

1. The rule governing objections to instructions requires the making of a specific objection to a jury instruction at trial before submission of the case to the jury. *Daniels v. Board of Curators of Lincoln University,* 51 S.W.3d 1 (Mo.App. W.D.2001). The record indicates that Jakob objected to the language of the verdict director. Specifically, Jakob contended that the wording in the modified verdict director varied from MAI 17.03, and that the modified instruction should not be used as it was not an approved jury instruction. Gumpanberger argues that this was only a general objection to the submission of Instruction No, 9, whereas Jakob's brief goes beyond that general objection into specifics that he never objected to previously. We disagree. The record reflects that Jakob clearly objected to the wording of the modified jury instruction. Jakob's points on appeal in his brief also go to the wording of the jury instruction. Further, we note the Southern District's suggestion that a party's objection that a jury instruction fails to precisely track the language of the applicable MAI instruction is sufficient to satisfy the specificity requirement. *Vintila v. Drassen,* 52 S.W.3d 28, 43 (Mo.App. S.D.2001).

court to determine whether the erroneous instruction caused a prejudicial effect; and (d) No judgment is to be reversed on account of instructional error unless the error materially affected the merits of the case. *Powers v. Ellfeldt*, 768 S.W.2d 142, 146 (Mo.App. W.D.1989).

Instruction No. 9 was the verdict director in this case. It set out:

"In your verdict you must assess a percentage of fault to defendant Bill Jakob, whether or not Daymeon Bradshaw was partly at fault, if you believe:

First, either:

Defendant Bill Jakob was traveling too fast for the conditions,

Defendant Bill Jakob knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped or swerved or slackened speed or slackened speed and swerved but defendant Bill Jakob failed to do so, or

Defendant Bill Jakob was following the car in front of him to closely, or

Defendant Bill Jakob failed to keep a careful lookout, and

Second, defendant Bill Jakob, in any one or more of the respects submitted in paragraph. [sic] First, was thereby negligent, and

Third, as a direct result of negligence, plaintiff Tomacena Gumpanberger sustained damage."

As can be seen, Instruction No. 9 fails to comply with any of the approved instructions in the MAI 17.00 series.[2] Likewise, Instruction No. 9 fails to comply with either MAI 20.01 or MAI 20.02. Gumpanberger argues that this "modification" was necessary for a jury member to be able to find that Jakob had driven at an excessive speed in light of the testimony that he was otherwise following the speed limit. In support of his argument, Gumpanberger cites to *Manzella v. St. Louis Public Service Co.,* 202 S.W.2d 567, 568 (Mo.App. 1947), which allowed a jury instruction on excessive speed under the circumstances and conditions then and there existing.

*Manzella* does not apply here. First, *Manzella,* unlike the present case does not involve MAI. Further, unlike *Manzella,* there is *no evidence* in the present case of how fast Jakob was driving at the time of the accident, and thus no evidence to support an excessive speed instruction. In *Manzella,* the evidence showed that a street car that ran into another vehicle was traveling in excess of 15 to 20 miles per hour at the time of the accident. Here, the record contains no evidence of speed at the time of the accident. Here, the evidence presented at trial shows that prior to the accident, Jakob was traveling between 50 and 55 miles per hour in a 55 mile per hour zone, during which time there were no circumstances or conditions (e.g. ice, snow, rain, fog, etc.) which would have suggested that Jakob travel at a slower speed. Prior to the accident, Jakob was traveling at a distance of 2 1/2 to 3 car lengths behind the vehicle in front of his, and there were three cars in front of him that were all following at approximately the same distance of 2 1/2 to 3 car lengths between each other. The evidence shows that prior to the accident, Jakob slowed his vehicle three separate times-each time a car in front of him swerved. Jakob did not hit the car in front of him.

Because there is no evidence of Jakob's speed at the time of the accident, this Court, and the jury, could only guess as to the speed Jakob was traveling. Without additional evidence of Jakob's speed, there is no way for a jury to determine that

---

**2.** See MAI 17.01; 17.02; 17.03; 17.04; and 17.05.

Jakob was "traveling too fast for the conditions." The fact that Jakob hit the child while other cars did not and the fact that the child was found a certain distance from Jakob's parked truck is insufficient evidence as to Jakob's speed at the time of the accident. Thus, there is no evidentiary support for the first clause of Instruction No. 9.[3] Even had Gumpanberger not modified the clause, there is no evidence in the record supporting Instruction No. 9 as submitted.[4] Therefore, the use of this non-MAI instruction is presumed prejudicial.

In an attempt to rebut the presumption, Gumpanberger cites *Nakata by Nakata v. Platte County R–3 School Dist.*, 750 S.W.2d 669 (Mo.App. W.D.1988). *Nakata* hurts more than helps in that it underscores Gumpanbergers errors previously discussed, namely unjustified modification of MAI and lack of evidence supporting the verdict-director. In *Nakata*, the court reviewed the failure to follow MAI 17.03 and 17.05, by use of the words, "too fast," as opposed to "at an excessive speed," and "looked away," as opposed to "failed to keep a careful lookout," in jury instructions to describe a minor plaintiff's potential contributory negligence. *Nakata* at 672. In *Nakata*, there was a lack of evidence supporting excessive speed or a failure to keep a careful lookout. The court held that these variations from MAI 17.03 and MAI 17.05 were prejudicial when combined with a deficiency in the evidence to support an instruction on excessive speed or failure to maintain a lookout. *Id.*

Like that in *Nakata*, the jury instruction in the present case varies from the language of any acceptable MAI, and no evidence exists to support Instruction No. 9

in the form offered. The *Nakata* case, rather than supporting Gumpanberger's argument of no prejudice, compels our conclusion of prejudice for failure to adhere to the applicable MAI instructions. We find Gumpanberger's other arguments rebutting prejudice similarly unpersuasive. Accordingly, we find Gumpanberger's modification of MAI prejudiced Jakob by affirmatively misdirecting the jury.

### Omission of the connector "or"

Additionally, Gumpanberger's modification of Jury Instruction No. 9 omits the disjunctive connector "or" after the first clause of Paragraph First. In omitting the connector "or," Gumpanberger, in effect, submits two separate and independent theories of recovery in the conjunctive, namely: (1) "Defendant Bill Jakob was traveling too fast for the conditions", and (2) "Defendant Bill Jakob knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped or swerved or slackened speed or slackened speed and swerved but Defendant Bill Jakob failed to do so." As a conjunctive submission, this violates MAI 1.02, which provides that "The practice of submitting dual or multiple theories of recovery or defense in the conjunctive is prohibited," and is reversible error. *Strickland v. Barker*, 436 S.W.2d 37, 40 (Mo.1969). Upon review of the record we find that this omission was neither inadvertent nor typographical.

### Conclusion

A long succession of the best trial lawyers in Missouri have crafted instructions

---

**3.** Incidentally, the second clause of Instruction No. 9 is likewise without evidentiary support.

**4.** There were at least three verdict-directors in the MAI 17.00 series which had evidentiary support and would have justified submission of the claim to the jury.

for the Supreme Court on the Instruction Committee. These lawyers were not, and are not, pedants. MAI accomplishes the fair submission of the law to the jury on the facts before the court. The verdict director in this case misleads and misdirects. We reverse and remand for a new trial.

REVERSED AND REMANDED FOR NEW TRIAL.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.